IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


CEASAR FELTON and MARY FELTON                    PLAINTIFFS

vs.                              CAUSE NO. 5:12-cv-139(DCB)(MTP)

WELLS FARGO BANK; MORRIS & ASSOCIATES;
FEDERAL NATIONAL MORTGAGE COMPANY;
SEAN SOUTHERN, Individually and as
Trustee under the Substituted Trustee's
Deed; DEMETRIUS WEATHERBROOK, Individually
and in his Capacity as Justice Court Clerk
for Yazoo County; BENNIE WARRINGTON,
Individually and in his Capacity as Justice
Court Judge for the Southern District of
Yazoo County; YAZOO COUNTY BOARD OF
SUPERVISORS; and JOHN AND JANE DOES 1-100          DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on defendants Bennie Warrington, Demetrius Westbrook (incorrectly named "Weatherbrook" in the plaintiffs' Complaint), and the Yazoo County Board of Supervisors' Motion for Summary Judgment Premised on Immunity **(docket entry 12)**. Having carefully considered the motion, to which no response has been filed, and the applicable law, as well as the record in this case, the Court finds as follows:

The plaintiffs' Complaint was filed on August 29, 2012, and alleges that the Yazoo County Justice Court did not have jurisdiction over eviction proceedings brought before the justice court and styled <u>Wells Fargo Bank, NA vs. Ceasar L. Felton and Mary L. Felton / All other occupants</u>, Cause No. 29-769. The plaintiffs allege that Judge Warrington presided over the justice court

proceeding, that Justice Court Clerk Westbrook accepted and recorded the Complaint filed by Wells Fargo, and that the Yazoo County Board of Supervisors failed to train and/or supervise Judge Warrington and Clerk Westbrook regarding their duties.

The plaintiffs allege federal constitutional claims against Judge Warrington and Clerk Westbrook for denial of due process, equal protection, and right to privacy, brought pursuant to the procedural vehicle of 42 U.S.C. § 1983.  Complaint, ¶¶ 56, 58. They also allege state law claims against Judge Warrington, Clerk Westbrook, and the Yazoo County Board of Supervisors for unlawful eviction, negligent trespass to land, negligent trespass to chattel, negligent abuse of process, reckless indifference to the plaintiffs and failure to train and supervise.

Judge Warrington claims that he is entitled to absolute immunity, or, in the alternative, qualified immunity, from any and all federal claims, since the rendering of judgment in the justice court action was a judicial function and was not taken in the complete absence of all jurisdiction.  He also alleges that he is entitled to judgment on all state law claims on immunity grounds. Clerk Westbrook claims that he is entitled to qualified immunity on all federal claims, and that he is entitled to judgment on all state law claims on immunity grounds.  The members of the Yazoo County Board of Supervisors, in their individual capacities, assert qualified immunity as to all federal claims against them on grounds

that the plaintiffs have not alleged that they personally participated in any of the actions alleged in the Complaint, and that there is no evidence they were deliberately indifferent to any need for training or supervision with regards to Judge Warrington and/or Clerk Westbrook.  The individual supervisors also assert that they are entitled to judgment on all state law claims based on immunity grounds.

Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  When ruling on a motion for summary judgment, the court must consider the record evidence and draw all reasonable inferences in the nonmoving party's favor.  Paz v. Brush Engineered Materials, Inc., 555 F.3d 383, 391 (5th Cir.2009).

The party seeking summary judgment bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record evidence] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Paz, 555 F.3d at 391 (quoting Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th

3

Cir. 2000)).

Once the moving party meets its burden, the nonmoving party must then "come forward with specific facts showing a genuine factual issue for trial." Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist., 635 F.3d 685, 690 (5th Cir. 2011).  The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(internal citations omitted).  As the 2010 amendments to Rule 56 make clear, a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials ...."  Fed.R.Civ.P. 56(c)(1)(A).

The plaintiffs have failed to respond to the defendants' motion for summary judgment.  The local rules of this Court require a response to a motion within fourteen days, L.U.C.R. 7(b)(4), which is not optional.  Blackard v. City of Southaven, 2012 WL 827192, *3 (N.D. Miss. March 9, 2012).  The plaintiffs, who are represented by counsel, neither responded to the motion nor moved for additional time to respond.

The Court notes that it may not grant summary judgment by

4

default, _i.e._, merely because there is no opposition to the motion. Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n.3 (5th Cir. 1995).  However, the Court may accept as undisputed the movant's version of the facts and grant the motion where the movant has made a prima facie showing of its entitlement to summary judgment. Eversley v. Mbank Dallas, 843 F.2d 172, 174 (5th Cir. 1988); Romberger v. United Transp. Union, 930 F.Supp. 1131, 1132 (N.D. Miss. 1996).  In other words, the defendants must still meet their burden of establishing that no genuine issue of material fact exists concerning the plaintiffs' claims and that the defendants are entitled to entry of judgment as a matter of law.

The Plaintiffs' Complaint relates to an eviction proceeding before the Justice Court of Yazoo County, Mississippi, which was filed by defendant Wells Fargo Bank on March 2, 2011.  In the Complaint for Eviction, Wells Fargo made the following allegations against Ceasar and Mary Felton:

> The basis for the Plaintiff's claim against the Defendant[s] is [that] they are wrongfully occupying the property following a foreclosure sale held on the 2nd day of February, 2011.  That proper and lawful notice has been given to the Defendant[s] according to statute prior to initiating this eviction proceeding.

Justice Court Pleadings, YC000001, ¶ 4.

Summons was issued on March 2, 2011, directing Ceasar and Mary Felton to appear before the Yazoo County Justice Court on March 24, 2011.  After the hearing, the following judgment was entered by the Justice Court:

> This cause this day coming on to be heard the court hereby ordered and adjudged that judgment be entered in favor of Plaintiff by consent. Defendants are to vacate the premises / be removed from 1937 Barnwell Circle Yazoo City on or before April 25, 2011.

<u>Id</u>. at YC000020.

On April 29, 2011, Wells Fargo moved the Yazoo County Justice Court for a warrant of removal, which was issued on May 6, 2011. <u>Id</u>. at YC000015, YC000018.  The eviction took place on May 11, 2011, at 8:00 am.  <u>Id</u>. at YC000018.  On May 11, 2011, Ceasar Felton, represented by Steven E. Waldrup, and Mary Felton, <u>pro se</u>, filed an Emergency Motion for Temporary Restraining Order and a Preliminary Injunction with the Mississippi Supreme Court.  MSC Docket (Exhibit C attached to the defendants' motion for summary judgment).  This Motion was dismissed by the Mississippi Supreme Court on May 11, 2011, due to the Feltons' failure to comply with Miss.R.App.P. 21.  <u>See</u> Justice Court Pleadings, YC000016.

The plaintiffs allege in their present Complaint that the Yazoo County Justice Court did not have jurisdiction over the eviction proceedings.  They allege the following federal claims brought pursuant to the procedural vehicle of 42 U.S.C. § 1983, against Judge Warrington and Clerk Westbrook:

**DENIAL OF DUE PROCESS AND EQUAL PROTECTION**

. . .

56. The actions of the Defendants denied the Plaintiff[s] of [their] property rights without due process.

**RIGHT TO PRIVACY**

. . .

58. The Plaintiffs['] Fourth Amendment Rights were
violated as a result of the actions of [defendant Bennie
Warrington] when their right of privacy was invaded ....

Complaint, ¶¶ 56, 58.  The plaintiffs also allege state law claims
against Judge Warrington, Clerk Westbrook and the Yazoo County
Board of Supervisors for unlawful eviction, negligent trespass to
land, negligent trespass to chattel, negligent abuse of process,
reckless indifference to the Plaintiffs, and failure to train and
supervise.  The plaintiffs allege that Clerk Westbrook should not
have accepted the Complaint filed by Wells Fargo, due to lack of
jurisdiction, that Judge Warrington should not have ruled on the
Complaint filed by Wells Fargo, due to lack of jurisdiction, and
that the Yazoo County Board of Supervisors "were negligent in
[their] failure to supervise and train Justice Clerk Demetrius
Westbrook and the Honorable Judge Bennie Warrington that [the
Justice Court] did not have jurisdiction over unlawful entry and
detainers due to the existence of a County Court in Yazoo County."
Complaint, ¶ 29.

Judge Warrington, Clerk Westbrook, and the individual members
of the Board of Supervisors move for summary judgment as to all
claims against them in their individual capacities, based on
immunity defenses.

## I. JUSTICE COURT JUDGE BENNIE WARRINGTON

Judge Warrington claims that he is entitled to absolute immunity, or, in the alternative, qualified immunity, from any and all federal claims, since the rendering of judgment in the justice court action was a judicial function. Judges enjoy absolute immunity from liability in damages for their judicial acts or "in the exercise of their judicial functions." Boyd v. Biggers, 31 F.3d 279, 284 (5th Cir. 1994) (citing Graves v. Hampton, 1 F.3d 315, 317 (5th Cir.1993); Forrester v. White, 484 U.S. 219, 225 (1988)). Such absolute immunity "can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction." Boyd, 31 F.3d at 284-85 (citing Mireles v. Waco, 502 U.S. 9, 11-12 (1991); Forrester, 484 U.S. at 220-21)("holding that a state judge's dismissal of a subordinate court employee is not a judicial act entitled to absolute immunity.")). "A judge's acts are judicial in nature if they are 'normally performed by a judge and the parties affected dealt with the judge in his judicial capacity.'" Boyd, at 285 (quoting Mireles, 502 U.S. at 12; Stump v. Sparkman, 435 U.S. 349, 362 (1978)). In addressing whether Judge Warrington acted outside the scope of his judicial capacity, the Court considers:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered

8

> around a case pending before the court; and (4) whether
> the acts arose directly out of a visit to the judge in
> his official capacity.

Ballard v. Wall, 413 F.3d 510, 515 (5th Cir. 2005)(quoting Malina v. Gonzales, 994 F.2d 1121, 1124 (5th Cir. 1993)). The plaintiffs have not alleged any facts that would indicate that Judge Warrington was performing a nonjudicial function. The Justice Court order to vacate the premises was entered following a hearing before the court and in the courthouse, and entering orders and issuing warrants are typical functions of judges. See Ballard, 413 F.3d at 516.

As to the second prong for the application of judicial immunity, "'[w]here a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." Malina, 994 F.2d at 1125 (citation omitted). "If [a] Judge ... 'merely acted in excess of his authority,' [he] is still protected by judicial immunity." Ballard, 413 F.3d at 517 (quoting Malina, 994 F.2d at 1125). "Only in the clear absence of jurisdiction will '[a] judge ... be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority.'" Lewis v. City of Waxahachie, 465 Fed. Appx. 383, 384 (5th Cir. 2012)(holding that if a judge "had at least some subject-matter jurisdiction," immunity applies); see also Davis v. Bayless, 70 F.3d 367, 373 (5th Cir. 1995)("For purposes of immunity the judge's jurisdiction is construed broadly and a judge is not

deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.")(internal quotations and citations omitted).

Under Mississippi law, a complaint for eviction can either be taken as an unlawful entry and detainer claim, pursuant to Miss. Code Ann. § 11-25-1, or, in certain circumstances, can be taken under either Miss. Code Ann. § 89-7-1 et seq., or Miss. Code Ann. § 89-8-1 et seq. A justice court will have jurisdiction over an unlawful entry and detainer action brought pursuant to § 11-25-1, except where a county court is present in the jurisdiction. Where a county court is present in the jurisdiction, Miss. Code Ann. § 9-9-21 provides:

> [County courts] shall have exclusively the jurisdiction heretofore exercised by the justice court in the following matters and causes: namely, eminent domain, the partition of personal property, and actions of unlawful entry and detainer, provided that the actions of eminent domain and unlawful entry and detainer may be returnable and triable before the judge of said court in vacation.

Miss. Code Ann. § 9-9-21.

Wells Fargo Bank brought an action entitled "Complaint for Eviction" before the Justice Court of Yazoo County, Mississippi. The movants in the case sub judice quote from a recent Mississippi Attorney General's Opinion on the subject of eviction:

> If removal is sought by use of the remedy of unlawful entry and detainer and there is a county court in the

10

jurisdiction the action must be filed in the county
court. See MS AG Op., Mullen (May 2, 2008) citing
Section 9-9-1 of the Mississippi Code which grants
exclusive jurisdiction of unlawful entry and detainer to
county court when such a court is available.

If the facts of the particular case allow for an eviction
proceeding pursuant to Section 89-7-1 et seq or Section
89-8-1 et seq. of the Mississippi Code then the action
may be filed in justice court or county court.

Memorandum in Support of Motion for Summary Judgment, p. 8 (quoting

Miss. A. G. Opinion No. 2008-00459, Erby (Sept. 5, 2008)(2008 WL

4560056)).

Pursuant to the foregoing statutes and interpretation, this

Court finds that a justice court at least has conditional

jurisdiction over eviction proceeding such as the one complained of

by the plaintiffs. Even when there is a county court within the

same jurisdiction as the justice court, the justice court may still

maintain jurisdiction over eviction proceedings dependant upon the

claims made and the statute under which the proceedings are filed.

Because the justice court has some subject matter jurisdiction over

eviction proceedings, Fifth Circuit precedent dictates that

judicial immunity applies to Judge Warrington's rulings.

In the alternative, the movants assert that Judge Warrington

is entitled to qualified immunity, which protects public officials

from liability "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a

reasonable person would have known." Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982). "Qualified immunity balances two important

11

interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (citing Groh v. Ramirez, 540 U.S. 551, 567 (2004)(Kennedy, J., dissenting)(quoting Butz v. Economou, 438 U.S. 478, 507 (1978) for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

A district court undertakes a two-pronged analysis in determining whether a government official is entitled to qualified immunity, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.   Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).   Prior to Pearson, Saucier mandated that whether "the facts alleged show the officer's conduct violated a constitutional right ... must be the initial inquiry" in every qualified immunity case.   Saucier, 533 U.S. at 201.   However, in Pearson, the Supreme Court concluded that

> while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory.   The judges of the district courts and the courts of appeals should be permitted to exercise their

12

> sound discretion in deciding which of the two prongs of
> the qualified immunity analysis should be addressed first
> in light of the circumstances in the particular case at
> hand.

Pearson, 555 U.S. at 236.  "There are cases in which it is plain
that a constitutional right is not clearly established but far from
obvious whether in fact there is such a right."  Id. at 237.
"Saucier's two-step protocol 'disserve[s] the purpose of qualified
immunity' when it 'forces the parties to endure additional burdens
of suit - such as the costs of litigating consitutional questions
and delays attributable to resolving them - when the suit otherwise
could be disposed of more readily.'"  Id. (quoting Brief for Nat.
Assn. of Criminal Defense Lawyers as Amicus Curiae 30).

     In this case the plaintiffs allege that the Yazoo County
Justice Court did not have jurisdiction over the proceedings at
issue, and that Judge Warrington therefore deprived them of their
property rights without due process of law.    It is well-
established, however, "that neither negligent nor intentional
deprivations of property violate due process where there is an
adequate state tort remedy available." Stafford v. Dillon, 2012 WL
6599922, *6 (S.D. Miss. Dec. 18, 2012)(citing Daniels v. Williams,
474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984)).
The plaintiffs had the right to appeal any judgment from the
Justice Court of Yazoo County to the County Court of Yazoo County,
provided all necessary appeal documents were filed within thirty
days of the judgment.  See Miss. Code Ann. § 11-51-81.    The

13

plaintiffs were provided at least 30 days to appeal the March 24, 2011, ruling of the Justice Court, but failed to do so.  Instead, they waited until May 11, 2011, to file an appeal with the Mississippi Supreme Court, which that court determined was procedurally barred.  Because the adequate state court remedy of appeal to County Court was available to the plaintiffs, they cannot maintain a due process claim based on an alleged deprivation of property rights.

The plaintiffs have also generally alleged an equal protection claim.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "[A] violation of equal protection occurs only when the government treats someone differently than others similarly situated; if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action - even if irrational - does not deny them equal protection of the laws." Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988).  The Equal Protection Clause is violated by intentional discrimination, which implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action, at least in part, for the purpose of causing an adverse effect on an identifiable group. Vera v. Tue, 73 F.3d 604 (5th Cir.1996).

14

To successfully make a claim under the Equal Protection
Clause, a § 1983 plaintiff must prove that a state actor
intentionally discriminated against him because of membership in a
protected class. See Bryan v. City of Madison, 213 F.3d 267, 277
(5th Cir. 1997). "Discriminatory purpose in an equal protection
context implies that the decisionmaker selected a particular course
of action at least in part because of, and not simply in spite of,
the adverse impact it would have on an identifiable group." Id.
In the case sub judice, the plaintiffs have not identified their
protected class, nor stated any facts in support of their claim.
Like their due process claim, the plaintiffs' equal protection
claim is without merit.

Regarding the plaintiffs' property and privacy interests, "the
Fourth Amendment protects only those expectations of privacy that
society recognizes as 'legitimate.'" Freeman v. City of Dallas,
242 F.3d 642, 653 (5th Cir. 2001)(quoting New Jersey v. T.L.O., 469
U.S. 325, 338 (1984)). "'What expectations are legitimate varies,
of course, with context ... [and] ... may depend upon the
individual's legal relationship with the State.'" Freeman, 242
F.3d at 653 (quoting Vernonia School Dist. 47J v. Acton, 515 U.S.
646, 654 (1995)). "After a foreclosure sale, 'the debtor is
divested of all legal and equitable interest in the foreclosed
property.'" Moore v. Marathon Asset Management, LLC, 973 So.2d
1017, 1221 (Miss. App. 2008)(quoting In re Applewhite, 106 B.R.

15

468, 469-70 (Bankr. S.D. Miss. 1989); <u>Anderson v. Kimbrough</u>, 741 So.2d 1041, 1047 (¶ 22) (Miss. App. 1999)).

According to the pleadings filed by Wells Fargo with the Justice Court of Yazoo County, a foreclosure sale had already been perfected; therefore, the plaintiffs did not have any legitimate rights to the property, including a right to privacy, and the plaintiffs have no constitutional claim under the Fourth Amendment against Judge Warrington.

For the foregoing reasons, the Court finds that defendant Judge Bennie Warrington is entitled to absolute immunity and/or qualified immunity from any and all federal claims brought against him in his individual capacity.

As for the state law claims, the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1, <u>et</u> <u>seq</u>., provides the exclusive remedy against a governmental entity and its employees for acts or omissions which give rise to a suit. <u>Lang v. Bay St. Louis/ Waveland Sch. Dist.</u>, 764 So.2d 1234, 1236 (Miss. 1999). To the extent that Judge Warrington was acting pursuant to and within the scope of his employment, he is immune from individual liability. The "exclusive remedy" portions of the MTCA provide in pertinent part a follows:

> (1) The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee . . . for the act or omission which gave rise to the claim or suit; ....

16

Miss. Code Ann. § 11-46-7(1).  The MTCA is the sole authority - statutory or otherwise - governing the rights and liabilities of the parties as to the plaintiffs' state law claims.  According to § 11-46-5 of the MTCA:

> (2) For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.
>
> (3) For the purposes of this chapter and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment.

Miss. Code Ann. § 11-46-5.  Absent admissible and competent proof of fraud, malice, libel, slander, defamation or any criminal offense, Judge Warrington is entitled to complete immunity.  Miss. Code Ann. § 11-46-7(2) states:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

Miss. Code Ann. § 11-46-7(2).  Under Mississippi law, one who is performing his job duties as a governmental employee is not subject

to personal liability.  <u>Roderick v. City of Gulfport</u>, 144 F. Supp.2d 622 (S.D. Miss. 2000); <u>Conrod v. Holder</u>, 825 So.2d 16 (Miss. 2002); <u>Mallery v. Taylor</u>, 805 So.2d 613 (Miss. 2002); <u>Cotton v. Paschall</u>, 782 So.2d 1215 (Miss. 2001).  To the extent that Judge Warrington was acting within the course and scope of his employment, he cannot be held liable in his individual capacity on the basis of the plaintiffs' state law claims.

In addition, judicial immunity is well-established under Mississippi law.  <u>See</u> <u>Loyacono v. Ellis</u>, 571 So.2d 237, 238 (Miss. 1990).  Judges of courts of superior or general jurisdiction are not liable in civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and alleged to have been done maliciously or corruptly.  <u>Id</u>.  "Public policy mandates that a judge should have the power to make decisions without having to worry about being held liable for his actions."  <u>Id</u>.  "If someone believes a judge has acted either contrary to or in excess of her authority, the primary remedy is to file a complaint with the Mississippi Commission on Judicial Performance."  <u>Vinson v. Prather</u>, 879 So.2d 1053 (Miss. App. 2004)(citing <u>Miss. Comm'n of Jud. Perform. v. Russell</u>, 691 So.2d 929, 947 (Miss. 1997)).

For the foregoing reasons, the Court finds that defendant Judge Bennie Warrington is immune from any and all state law claims brought against him in his individual capacity.

II. JUSTICE COURT CLERK DEMETRIUS WESTBROOK

Like Judge Warrington, Clerk Westbrook asserts the two types of immunity defenses recognized by the United States Supreme Court in the context of § 1983 claims.  Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "'Absolute immunity' denies a person whose federal rights have been violated by a government official any type of remedy, regardless of the conduct." O'Neal v. Mississippi Board of Nursing, 113 F.3d 62, 65 (5th Cir. 1997).

"[T]he Supreme Court has been 'quite sparing' in recognizing absolute immunity." Id. (quoting Forrester v. White, 484 U.S. 219, 224 (1988)).  Officials whose duties require a full exemption from liability include

> judges performing judicial acts within their jurisdiction, Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871), prosecutors in the performance of their official functions, Yaselli v. Goff, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), and certain "quasi-judicial" agency officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court. Butz v. Economou, 438 U.S. 478, 511-17, 98 S. Ct. 2894, 2913-16, 57 L. Ed. 2d 895 (1978).

Id.

Court clerks are entitled to absolute immunity from actions

19

"for damages arising from acts they are specifically required to do under court order or at the judge's discretion." Clay v. Allen, 242 F.3d 679, 682 (5th Cir. 2001).  They are entitled to only qualified immunity from actions for damages arising out of the performance of their routine duties.  Id.

Miss. Code Ann. § 9-11-27 provides:

> The [justice court] clerk and deputy clerks shall be empowered to file and record actions and pleadings, to receive and receipt for monies, to acknowledge affidavits, to issue warrants in criminal cases upon direction by a justice court judge in the county, to approve the sufficiency of bonds in civil and criminal cases, to certify and issue copies of all records, documents and pleadings filed in the justice court and to issue all process necessary for the operation of the justice court.  The clerk or deputy clerks may refuse to accept a personal check in payment of any fine or cost or to satisfy any other payment required to be made to the justice court.  All orders from the justice court judge to the clerk of the justice court shall be written.  All cases, civil and criminal, shall be assigned by the clerk to the justice court judges of the county in the manner provided in Section 11-9-105 and Section 99-33-2.

Miss. Code Ann. § 9-11-27.

In the case sub judice, the plaintiffs allege that Clerk Westbrook did nothing more than receive and file-stamp pleadings filed by the parties in the Wells Fargo Bank vs. Felton case.  In other words, they allege that this defendant merely entered pleadings in accordance with the statute, i.e., carried out his routine duties according to Mississippi law.  Therefore, although Westbrook is not entitled to absolute immunity, he is entitled to qualified immunity.  See Harlow, 457 U.S. at 818 ("[G]overnment

20

officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

As for the state law claims against defendant Westbrook, he, like Judge Warrington, is entitled to immunity in his individual capacity under the Mississippi Tort Claims Act where it is alleged that he acted within the course and scope of his employment.  See Miss. Code Ann. § 11-46-5, § 11-46-7.  In addition, it is well established under Mississippi law that court clerks are immune from civil liability when performing official acts.  Vinson v. Benson, 805 So.2d 571, 575 (Miss. App. 2001)(citing Johnson v. Craft, 673 F. Supp. 191, 193 (S.D. Miss. 1987)).  Because the plaintiffs' allegation against this defendant is that he was performing the quintessential official act of a justice court clerk, i.e. receiving, filing and recording court documents, Clerk Westbrook is immune from state law liability in his individual capacity.


### III. YAZOO COUNTY BOARD OF SUPERVISORS

"[U]nder Mississippi law, a county board of supervisors acts in an official, not individual, capacity.  Any neglect or failure in the discharge of its duties is the default of the board itself, not [of] the individual members who comprise the board." Bruns v. Garber, 2007 WL 1141503 *5 (S.D. Miss. April 17, 2007).  A

supervisor may only be liable in his individual capacity if he actively participated in the constitutional deprivation, or if he personally implemented a policy that caused the plaintiff's injury. Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987).  In this case, the plaintiffs do not allege personal involvement by any individual member of the Board of Supervisors, nor do they allege that any individual supervisor was causally connected to the alleged deprivation in any way.  Since the Complaint contains allegations against the Board of Supervisors in its official capacity only, the individual board members are entitled to qualified immunity from any and all federal claims brought against them in their individual capacities.

The individual supervisors, like Judge Warrington and Clerk Westbrook, are also entitled to immunity from any state law claims since it is not alleged that they acted outside the course and scope of their employment.  See Miss. Code Ann. §§ 11-46-5 and 11-46-7.

The defendants' motion is well taken, and all claims against them in their individual capacities shall be dismissed with prejudice.

The Court notes that the defendants' motion does not address the claims against them in their official capacities and/or claims against Yazoo County.

Accordingly,

IT IS HEREBY ORDERED that defendants Bennie Warrington, Demetrius Westbrook (incorrectly named "Weatherbrook" in the plaintiffs' Complaint), and the Yazoo County Board of Supervisors' Motion for Summary Judgment Premised on Immunity **(docket entry 12)** is GRANTED;

FURTHER ORDERED that all claims against defendant Bennie Warrington in his individual capacity are dismissed with prejudice;

FURTHER ORDERED that all claims against defendant Demetrius Westbrook in his individual capacity are dismissed with prejudice;

FURTHER ORDERED that all claims against defendants members of the Yazoo County Board of Supervisors in their individual capacities are dismissed with prejudice.

SO ORDERED, this the 27th day of September, 2013.


/s/ David Bramlette
UNITED STATES DISTRICT JUDGE